## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 06 2020, 8:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Taylor Marshall, *Appellant-Defendant,* | May 6, 2020 |
| | Court of Appeals Case No. 19A-CR-2471 |
| v. | Appeal from the Fayette Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Hubert Branstetter, Jr., Judge |
| | Trial Court Cause No. 21C01-1610-F3-771 |

**Barteau, Senior Judge.**

# Statement of the Case

Taylor Marshall appeals the trial court's order revoking her probation and ordering her to serve the entirety of her previously-suspended sentence. We affirm.

# Issues

Marshall raises three issues for our review, which we restate and expand as follows:

> I. Whether the trial court committed fundamental error in admitting certain hearsay evidence;
>
> II. Whether Marshall's right to due process was violated when the trial court admitted certain hearsay evidence;
>
> III. Whether sufficient evidence supports the trial court's finding that Marshall violated the terms of her probation; and
>
> IV. Whether the trial court abused its discretion by ordering Marshall to serve the entirety of her previously-suspended sentence in the Indiana Department of Correction (DOC).

# Facts and Procedural History

On October 26, 2016, the State charged Marshall with dealing in a narcotic drug and conspiracy to commit dealing in a narcotic drug, both as Level 3 felonies. On February 13, 2017, under terms of a plea agreement, Marshall agreed to plead guilty to dealing in a look-a-like substance as a Level 5 felony,

and, in exchange, the conspiracy charge would be dismissed. The trial court accepted the plea agreement and entered judgment of conviction consistent with the terms of the plea agreement on March 24, 2017. Marshall was sentenced to six years executed in the DOC to be served in the Purposeful Incarceration program.

[4] On October 5, 2018, Marshall filed a motion to amend the sentencing order to remove the purposeful incarceration requirement because she had been placed on a long waiting list for that program and could not participate in other programs while on the waiting list. On November 21, 2018, the State and Marshall entered into an Agreed Sentence Modification, and Marshall's sentence was subsequently modified. She was immediately released from incarceration to the House of Ruth program, and the three years remaining on her original six-year sentence was ordered served on probation, with the completion of the House of Ruth program a condition of probation.

[5] Marshall performed well in the House of Ruth program, completing an eighteen-month program in six months. However, on July 23, 2019, Marshall overdosed on drugs and had to be resuscitated at Reid Hospital with the drug Narcan. The following day, Marshall's probation officer, Charles Whallon, filed a Petition for Probation Violation Hearing, alleging that, when Marshall overdosed, she violated Rule #10 of the terms of her probation, which stated that "The defendant shall not use alcohol or illegal drugs[.]" Appellant's App. Vol. II, p. 58.

[6]     At some point, Officer Whallon learned from "other officers" that, on September 14, 2019, Marshall had visited the police department and requested that the police search her vehicle because Marshall believed that "bugs" or listening devices had been planted inside. Tr. pp. 11-12.

[7]     Marshall met with Officer Whallon at least four times after she overdosed. At each meeting, she admitted that she continued to use methamphetamine. In response to the admissions, Officer Whallon arranged for Marshall to attend in-patient drug treatment at a facility in Richmond, Indiana, but Marshall failed to show for the first appointment that was set for September 16, 2019. Marshall did appear at the facility on September 20, 2019, for an intake appointment, but she left the facility after refusing to sign required paperwork.

[8]     Marshall's probation revocation hearing took place on September 23, 2019. On that day, prior to the start of the hearing, a sheriff's deputy contacted Officer Whallon to tell him that Marshall was at a certain address and that she was behaving as if she were under the influence of drugs. Officer Whallon went to the address provided by the deputy and met with Marshall. He noticed that her behavior was "erratic" and "delusion[al]." *Id.* at 12. She told Officer Whallon that she had used drugs fifteen hours earlier. Based on the admission, probation officer Lindsey Tandy conducted a drug screen of Marshall just prior to the start of the revocation hearing. Marshall tested positive for methamphetamine, amphetamines, MDMA, and fentanyl. The results of the drug screen were initial results that had not yet been sent to a laboratory for confirmatory testing.

[9] At the revocation hearing, the trial court allowed over Marshall's objection Officer Whallon's testimony regarding statements that Marshall made to him—specifically, the statements about her drug use and the incident where the police searched her vehicle for listening devices. The trial court also allowed over Marshall's objection Officer Tandy's testimony regarding the results of the drug screen that was administered immediately prior to the start of the revocation hearing. The State did not introduce into evidence any printed documentation of the failed drug screen.

[10] At the hearing, the State argued that Marshall's probation should be revoked and that she should be directed to serve her previously-suspended three-year sentence in the DOC. Marshall argued that she should be allowed to participate in inpatient treatment and that her probation should be continued.

[11] At the conclusion of the hearing, the trial court determined that Marshall violated the terms of her probation, revoked her probation, and ordered her to serve in the DOC the remaining three years of her previously-suspended sentence. Marshall appeals.

# Discussion and Decision

## I. Standard of Review

[12] Marshall challenges the trial court's revocation of her probation. Our general standard of review in such cases is well-established. Probation is a favor granted by the State, not a right to which a defendant is entitled. *Butler v. State*,

951 N.E.2d 255, 259 (Ind. Ct. App. 2011). Though a defendant is entitled to due process in a probation revocation proceeding, he is not entitled to all the rights he enjoyed before the underlying criminal conviction, such as the applicability of the rules of evidence or an elevated burden of proof. *Id.* A defendant is, however, entitled to certain due process protections, including the right to confront witnesses, right to cross-examine witnesses, and right to representation of counsel. Ind. Code § 35-38-2-3(f) (2015); *Butler*, 951 N.E.2d at 259. There must also be substantial evidence of probative value from which the trial court could determine based upon a preponderance of the evidence that the defendant violated the terms of his probation. *Figures v. State*, 920 N.E.2d 267, 272 (Ind. Ct. App. 2010).

## II. Hearsay Evidence

[13] Marshall contends that the trial court erroneously admitted into evidence certain hearsay evidence, namely, Officer Whallon's testimony regarding the search of Marshall's vehicle and Officer Tandy's testimony regarding the results of Marshall's drug screen. Marshall claims that the testimony constituted inadmissible hearsay which does not pass the substantial trustworthiness test.

[14] Marshall concedes that she did not object to the testimony on grounds that it lacked substantial trustworthiness and states that the fundamental error doctrine applies. The fundamental error doctrine is extremely narrow and applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant

fundamental due process. *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), *trans. denied*. And, even where an error in the admission of evidence has been made—whether or not sufficient objection was raised to its admission—we will not reverse the trial court where the error was harmless. Ind. Trial Rule 61.

[15] "The due process right applicable in probation revocation hearings allows for procedures that are more flexible than in criminal prosecution." *Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007) (citing, *inter alia, Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). Thus, evidence may be deemed admissible for the purposes of probation revocation proceedings that would not be admissible during a criminal trial. *Id.*; *see also* Ind. Evidence Rule 101(d)(2) (providing that, except for rules concerning privilege, the Rules of Evidence do not apply in numerous criminal-related proceedings, including those dealing with probation revocation).

[16] As our supreme court noted, however, "[t]his does not mean that hearsay evidence may be admitted willy-nilly[.]" *Reyes*, 868 N.E.2d at 440. Because the right to confront accusers still applies to defendants in probation revocation proceedings, albeit in a less stringent form than in a criminal trial, we apply the "substantial trustworthiness" test to determine whether hearsay evidence is admissible during a probation revocation hearing. *Id.* at 441. The substantial trustworthiness test requires that the State demonstrate "good cause" for using hearsay rather than live testimony during a probation revocation proceeding. *Robinson v. State*, 955 N.E.2d 228, 232 (Ind. Ct. App. 2011). The good cause

requirement is met so long as the hearsay bears substantial guarantees of trustworthiness. *Id.* In reaching such a determination, the trial court must "evaluate the reliability of the hearsay evidence" and, ideally, "explain on the record why the hearsay is reliable and why that reliability is substantial enough to supply good cause for not producing live witnesses." *Id.* (citing *Reyes*, 868 N.E.2d at 441-42). Failure to provide an explanation on the record is not fatal where the record supports such a determination. *See Reyes*, 868 N.E.2d at 442 (affirming trial court's admission of affidavits in probation revocation despite the court's failure to provide detailed explanation on record because evidence supported substantial trustworthiness of affidavits).

[17] In this case, Marshall's failure to object to the testimony in question on grounds that it lacked substantial trustworthiness deprived the trial court of the opportunity to make a substantial trustworthiness determination. As such, on appeal, Marshall must not only demonstrate that the hearsay testimony of Officers Whallon and Tandy was not substantially trustworthy, but also that Marshall was so prejudiced by its admission into evidence that this denied her fundamental due process protections. Marshall cannot satisfy her burden.

[18] Regarding Officer Whallon's testimony—that Marshall drove to a police station and asked the officers to search her vehicle for listening devices—Marshall maintains that said testimony is not substantially trustworthy because "[Officer] Whallon never identified the officers from whom he obtained the information regarding the September 14th incident, the department with which the officers served, the basis for those unnamed officers' suspicions, or anything else which

would render the officers' statements substantially trustworthy." Appellant's Br. p. 13. However, even if we were to determine that Officer Whallon's testimony was not substantially trustworthy, we cannot say that the testimony amounted to fundamental error because Marshall has not shown any harm resulting from the testimony and has failed to demonstrate that the testimony prejudiced her substantial rights.

[19] We now turn to Officer Tandy's testimony regarding the results of Marshall's drug screen. Marshall's challenge to the trustworthiness of the testimony is as follows: "the test had not yet been submitted to a laboratory for analysis by an expert[;]" "[Officer] Tandy did not know the accuracy rate of the preliminary results or whether such results ever produced false positives[;]" she "did not detail her experience with such tests" and did not testify to any "specialized training in analyzing urine [drug] test results[;]" the State "offered no other evidence establishing the reliability of the testing or [Officer] Tandy's skill in reading the results[;]" and the manufacturer of the test was not identified. Appellant's Br. pp. 13-14. Despite these assertions, we find that the evidence presented at the revocation hearing supports a determination that the testimony offered by Officer Tandy was substantially trustworthy.

[20] First, Officer Whallon testified, without objection from Marshall, that on the day of Marshall's probation revocation hearing and prior to the start of the hearing, he spoke with Marshall; her behavior seemed "erratic" and "delusion[al;]" and she admitted to him that she had used methamphetamine "fifteen hours prior." Tr. p. 12. Next, Officer Tandy testified that, shortly

before the start of the probation revocation hearing, she performed a drug screen on Marshall. Officer Tandy further testified that she followed the "normal protocol" for "obtaining the urine sample[,]" and she described how she administered the test as follows: "We went into the restroom. . . . [Marshall] washed her hands beforehand . . . [. I] observed her screen in the cup, read the temperature[;] . . . it was valid and then waited at least two minutes and then read the results." *Id.* at 17. Officer Tandy then told the trial court that Marshall tested positive for "[methamphetamine, amphetamines, MDMA and fentanyl." *Id.* at 18. We, therefore, find that the record supports a determination that Officer Tandy's testimony regarding Marshall's positive drug screen results was substantially trustworthy, and we conclude that the trial court did not abuse its discretion when it allowed the officer's testimony. Moreover, even assuming, arguendo, that the court did abuse its discretion in admitting the testimony, we cannot say that the testimony amounted to fundamental error because, as with Officer Whallon's testimony, Marshall has not shown any harm resulting from Officer Tandy's testimony and has failed to demonstrate that the testimony prejudiced her substantial rights.

## III. Due Process Rights

[21] Next, Marshall contends that the trial court abused its discretion by allowing into evidence the probation officers' respective hearsay testimony because, according to Marshall, the testimony resulted in a violation of her rights to due process. Specifically, Marshall argues that she was denied her due process rights to adequately confront and cross-examine (1) the police officers who told

Officer Whallon that Marshall asked them to search her vehicle, and (2) Officer Tandy regarding the officer's testimony about the positive drug screen. Marshall further argues that the State failed to provide her with notice that it intended to offer into evidence Marshall's request for the search and the results of the drug screen. We take each argument in turn.

[22] "Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, 'the Due Process Clause of the Fourteenth Amendment [does] impose [ ] procedural and substantive limits on the revocation of the conditional liberty created by probation.'" *Debro v. State*, 821 N.E.2d 367, 374 (Ind. 2005) (citing *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999) (citing *Black v. Romano*, 471 U.S. 606, 610, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985))). The minimum requirements of due process that inure to a probationer at a revocation hearing include: "(a) written notice of the claimed violations of probation; (b) disclosure of the evidence against him; (c) an opportunity to be heard and present evidence; (d) the right to confront and cross-examine adverse witnesses . . . ." *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008); *see also* Ind. Code § 35-38-2-3(f) (providing in pertinent part that a probationer "is entitled to confrontation, cross-examination, and representation by counsel").

[23] "Nonetheless, confrontation rights in the context of probation revocation are not as extensive as they are in criminal trials." *Knecht v. State*, 85 N.E.3d 829, 833 (Ind. Ct. App. 2017). Indiana Evidence Rule 101(d)(2) allows for the admission of evidence during probation revocation hearings that would not be

permitted in a full-blown criminal trial. We also observe that our supreme court has noted that the United States Supreme Court's decision on the Sixth Amendment right to confrontation in criminal trials, *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d. 177 (2004), is not implicated in probation revocation hearings because probation revocation hearings are not criminal trials. *Reyes*, 868 N.E.2d at 440 n.1.

### *A. Confrontation and Cross-Examination of the Police Officers*

Marshall argues that she was denied her due process rights to confront and cross-examine the police officers who searched her vehicle. However, we already have determined that Marshall failed to demonstrate that Officer Whallon's testimony regarding the incident prejudiced her substantial rights. Thus, we decline to find that Marshall was denied her right to confront and cross-examine the police officers.

### *B. Confrontation and Cross-Examination of Officer Tandy*

As for Marshall's argument that she was denied her right to confront and cross-examine Officer Tandy regarding the results of the drug screen, to the contrary, the record establishes that Marshall was able to confront and cross-examine Officer Tandy. Specifically, Marshall questioned her as to any training she received in how to administer and read the results of the urine drug screen, the accuracy of the results, and whether the screen had ever produced false positives. Thus, Marshall was not denied her due process rights to confront and cross-examine Officer Tandy.

## C. Disclosure of Evidence

[26]   Marshall further argues that the trial court violated her right to due process when it allowed the State to use evidence against her (i.e., the probation officers' respective testimony in question) even though that evidence was not provided to Marshall prior to the start of the probation revocation hearing. While we agree that Marshall was not informed of the evidence in question prior to the start of the probation revocation hearing, we conclude that, altogether, Marshall had notice that her drug use would be an issue at her probation revocation hearing.

[27]   As to the evidence regarding the search of Marshall's vehicle, we note that it is unclear from the record the significance of the evidence and how the evidence factored into the determination that Marshall violated her probation. Regarding the evidence of the drug screen result, the record reveals that on July 23, 2019, Marshall was admitted to the hospital for a drug overdose and was administered a drug to resuscitate her. At each of four meetings between Marshall and Officer Whallon that occurred after her overdose, Marshall told Officer Whallon that she continued to use methamphetamine. On the day of her probation revocation hearing, she met with Officer Whallon and admitted to him that she had used methamphetamine in the last fifteen hours. Prior to the start of the hearing, Marshall submitted to a drug screen. While the timing of the drug screen may not have left much time for Marshall to mount a defense of the results of the screen, Marshall had to believe that evidence of her drug use would be an issue at her hearing given her prior admissions to her probation

officer of her continued drug use.  Finally, we note that Marshall did not request a continuance or additional time for preparation at the time the evidence of her drug screen results was introduced.  Based upon the foregoing, we cannot conclude that Marshall's due process rights were violated.

## IV. Sufficiency of the Evidence

[28] Marshall next contends that the evidence was insufficient to revoke her probation because the State failed to introduce the terms of her probation into evidence at the probation revocation hearing either through testimony or an exhibit.  Thus, according to Marshall, without proof of the terms of her probation, the State could not prove a violation of those terms.

[29] We review insufficiency of evidence claims in a probation proceeding as we do any other sufficiency of the evidence question.  *Smith v. State*, 727 N.E.2d 763, 765 (Ind. Ct. App. 2000).  We will not reweigh evidence or judge credibility of witnesses.  *Id.*  We look only to the evidence that supports the judgment and any reasonable inferences flowing therefrom.  *Pitman v. State*, 749 N.E.2d 557, 559 (Ind. Ct. App. 2001), *trans. denied*.

[30] We also note that probation revocation hearings are civil in nature, and that the State need only prove the allegations by a preponderance of the evidence.  *Smith v. State*, 963 N.E.2d 1110, 1112 (Ind. 2012).  Further, in civil cases, a judicially noticed fact is taken as conclusively establishing that fact.  Ind. Evidence Rule 201(a)(1).  A trial court may take judicial notice of the records of a court of this state, whether requested to do so, or not.  Evid. R. 201(b)(5), (c).

In addition, judicial notice may be taken at any stage of the proceeding. Evid. R. 201(d).

[31] Marshall argues that the State failed to introduce the specific conditions of her probation into evidence at the probation revocation hearing. The State's petition to revoke Marshall's probation stated that Marshall violated "Rule #10" of the terms of her probation, and that "Rule #10" specified, "The defendant shall not use alcohol or illegal drugs." Appellant's App. Vol. II, p. 58. The petition alleged Marshall "violated the terms of the probation established herein in that: The defendant overdosed on 7/23/2019 and was taken to Reid Hospital. Defendant received Narcan which reversed the effects of the illicit substances ingested." *Id.*

[32] At the outset of Marshall's initial hearing, held on August 23, 2019, the trial court asked Marshall if she had received a copy of the petition, and Marshall replied in the affirmative. The court then proceeded to read the allegations of the revocation petition on the record, stating the following:

> Looking at the petition it's a petition for probation violation and it alleges that on 11-21-2018, you were placed on probation for a period of three years after you were found guilty in 35-48-44-6(a) uh, dealing in a look[-]alike substance and that number Rule 10, stated the defendant shall not use alcohol or illegal drugs and then it alleges that . . . the defendant overdosed on 7-23-19, was taken to [a hospital] and [administered a drug] which reversed the effects of the substances ingested.

Tr. p. 4. Marshall cites no authority, and we are unaware of any, that requires the trial court to do more. Also, the condition that a defendant on probation should not commit an additional crime is automatically a condition of probation by operation of law without a specific provision to that effect. *Lucas v. State,* 501 N.E.2d 480, 481 (Ind. Ct. App. 1986); Ind. Code § 35-38-2-1(b) (2012).

[33] Finally, the trial court clearly took judicial notice of the contents of the file in this case. The record reveals that the file contains the original plea agreement, sentencing order, Agreed Sentencing Modification, and petition to revoke probation. These items conclusively established that Marshall: (1) was not to use illegal drugs; and (2) was still on probation at the time of the alleged probation violation. When combined with the testimony introduced at the probation revocation hearing, we find that there was sufficient evidence presented from which the trial court could determine the terms of Marshall's probation and then find that Marshall violated the terms.

## V. Sentence

[34] Marshall last contends the trial court abused its discretion in ordering her to serve her entire three-year suspended sentence in the DOC. Citing that she was able to maintain sobriety for some period of time before her relapse, she argues that the trial court's "sanction was overly harsh," and that the trial court should have ordered her to attend inpatient treatment. Appellant's Br. p. 20.

[35] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Probation revocation is a two-step process. First, the trial court must determine that a violation of a condition of probation actually occurred. *Woods*, 892 N.E.2d at 640. Second, the court must determine if the violation warrants revocation of probation. *Id.*

> "We review a trial court's sentencing decision in a probation revocation proceeding for an abuse of discretion." *Puckett v. State*, 956 N.E.2d 1182, 1186 (Ind. Ct. App. 2011) (citing *Abernathy v. State*, 852 N.E.2d 1016, 1020 (Ind. Ct. App. 2006)). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.* A defendant cannot collaterally attack the propriety of an original sentence in the context of a probation revocation proceeding. *Id.* However, a defendant is entitled to challenge the sentence a trial court decides to impose after revoking probation. *Id.* (citing *Abernathy*, 852 N.E.2d at 1020 (citing *Stephens v. State*, 818 N.E.2d 936, 939 (Ind. 2004) ("A defendant is entitled to dispute on appeal the terms of a sentence ordered to be served in a probation revocation proceeding that differ from those terms originally imposed."))).

*Johnson v. State*, 62 N.E.3d 1224, 1229-30 (Ind. Ct. App. 2016).

[36] Under Indiana Code section 35-38-2-3(h) (2015), if a petition to revoke probation is filed within the defendant's probationary period and the trial court finds the defendant has violated any terms of probation, the trial court may impose one or more of the following sanctions: (1) continue the person on probation, with or without modifying or enlarging the conditions; (2) extend the

person's probationary period for not more than one year beyond the original probationary period; or (3) order execution of all or part of the sentence that was suspended at the time of initial sentencing.

[37] Here, the record reveals that the trial court had ample basis for its decision to order Marshall to serve the entirety of her suspended sentence in the DOC. Marshall was originally sentenced to six years executed in the DOC to be served in the Purposeful Incarceration program. Approximately twenty-one months later, the State and Marshall entered into an Agreed Sentence Modification; Marshall's sentence was modified; and she was immediately released from incarceration to the House of Ruth program, and the three years remaining on her original six-year sentence were ordered served on probation. While Marshall performed well in the House of Ruth program, she eventually overdosed on illegal drugs and had to be resuscitated at a hospital. Although Officer Whallon arranged for Marshall to be admitted to a facility for inpatient drug treatment, Marshall "no-showed" for her first intake appointment. Tr. p. 10. While she did show for her second intake appointment, she refused to sign necessary paperwork and then left the facility. At the probation revocation hearing, Officer Whallon testified that Marshall told him on numerous occasions that she continued to use methamphetamine, and that on the day of her hearing, she told him she had used methamphetamine within the last fifteen hours. Results from a drug screen administered the day of the hearing showed that Marshall tested positive for methamphetamine, amphetamines, MDMA, and fentanyl.

[38]     The trial court first showed leniency by sentencing Marshall to serve her executed sentence in the Purposeful Incarceration program. The trial court again showed leniency by allowing Marshall's sentence to be modified, ordering her immediate release from prison, and suspending the remaining three years of her six-year sentence to probation. However, after having been afforded an opportunity to have her sentence suspended to probation, Marshall violated the terms of her probation by using illegal drugs. To the extent Marshall argues that she needs treatment, we note that the Indiana prison system offers multiple programs, including drug classes, designed to aid and rehabilitate inmates. Based upon the foregoing, and pursuant to the clear language of Indiana Code section 35-38-2-3(h), the trial court acted within its discretion in ordering execution of the entirety of Marshall's suspended sentence.

# Conclusion

[39]     We find no reversible error in the trial court's evidentiary rulings during the probation revocation hearing. There was sufficient evidence from which the trial court could properly conclude that Marshall violated the terms of her probation. The trial court did not abuse its discretion when it required Marshall, as the sanction for her probation violation, to serve the entirety of her suspended sentence in the DOC. The judgment of the trial court is affirmed.

[40]     Affirmed.

Robb, J., and Mathias, J., concur.